2010 OK CIV APP 131

**DIAMOND SEVENS, L.L.C. an Oklahoma Limited Liability Company, Plaintiff/Appellee,**

**v.**

**INTELLIGENT HOME AUTOMATION, INC., d/b/a Intelligent Home Automation, d/b/a IHA, an Oklahoma Corporation, Defendant/Appellant.**

No. 107,154.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 22, 2010.

---

Robert L. Rainey, Joseph C. Schubert, Oklahoma City, OK, for Appellant.

John M. Hickey, Sharon K. Weaver, Tulsa, OK, for Appellee.

LARRY JOPLIN, Presiding Judge:

¶ 1 Appellant, Intelligent Home Automation, Inc., Defendant below (IHA), seeks review of the trial court's order denying its motion to compel arbitration and motion to dismiss the petition filed by Appellee, Diamond Sevens, L.L.C., Plaintiff below (Diamond Sevens or Diamond). IHA claimed it established apparent authority that effectively bound Diamond Sevens to the terms of a contract that contained an arbitration clause. IHA also asserted Diamond Sevens ratified the contract. And finally, IHA claimed a venue selection clause in the contract made Diamond's filing in Tulsa County improper. IHA seeks attorney fees and costs as well.

¶ 2 The trial court disagreed with IHA's position, finding Ted Larkin, who signed the IHA contract, had no authority as an agent to bind Diamond Sevens. The trial court found the Larkin Co. was a general contractor that had authority to hire subcontractors for the completion of the building project. The trial court determined Diamond Sevens and Ted Larkin or the Larkin Company created an owner-general contractor relationship and nothing more. The trial court found no agreement to arbitrate existed between IHA and Diamond Sevens and found no evidence existed that Diamond Sevens ratified the agreement. As a result, the court denied the motion to compel arbitration and denied IHA's motion to dismiss. Having reviewed the record, we find no errors as alleged. The order of the trial court is affirmed.

¶ 3 In February 2004, the Larkin Company and Diamond Sevens entered into a construction contract for the building of a home, with Diamond Sevens designated as the "owner" and the Larkin Company as the "contractor." The contract provided that the contractor would perform, cause to be performed and supervise the construction of the home, including supervision of subcontractors, as well as provide a construction timeline and periodic progress reports. In essence, the Larkin Company became Diamond Sevens' general contractor.

¶ 4 One of the components of the home construction included a home automation system, providing centralized control of many systems within the home, including mechanical, electrical, lighting, security, the pool, and environmental elements. Larkin investigated several companies in the home automation

field and chose IHA for the Diamond Sevens project. In March 2004, Larkin signed the first agreement with IHA for the proposal and design of the home automation system. In this first IHA contract, Garth Brooks and Trisha Yearwood were listed as the customers, but the evidence indicated no one at the Larkin Co. or Diamond Sevens asked IHA to list Brooks or Yearwood. Garth Brooks was the Diamond Sevens project manager and a principal of the L.L.C. There was no reference to Diamond Sevens L.L.C. in the first agreement and neither Diamond Sevens, Brooks nor Yearwood signed the first IHA contract.

¶ 5 In March 2005 [1], Larkin and IHA entered into another agreement, known as the system contract. At the request of Larkin's assistant, the customer name was changed to Diamond Sevens L.L.C., removing the individuals' names that had appeared in the first contract. Larkin printed and signed his name as the customer. The system agreement contained the arbitration clause at issue. As with the first agreement, neither Brooks, Yearwood, nor any principal of Diamond Sevens signed this second contract. Brooks testified it was years later, sometime in 2008, that he actually saw the IHA contracts for the first time.

¶ 6 IHA sent its billing and invoices through the Larkin Co., never directly to Diamond Sevens or Brooks. IHA submitted bills to the Larkin Co., who then contacted Brooks. Money was then released via Diamond to Larkin and the Larkin Co. then paid the IHA invoices. At the time of the hearing in April 2009, IHA had collected in excess of $400,000 owing on the project. However, IHA asserts another $65,000 is still owed.

¶ 7 Throughout the process of designing, developing and installing the home automation system, IHA president, Todd Onstott, met with Larkin, Larkin's assistant and the homeowners, Brooks and Yearwood. Brooks and Yearwood were described as "hands on" and they, along with Larkin, requested a number of changes in an effort to get the system installed and working according to expectations.

¶ 8 According to Larkin and Brooks, the automation system never worked properly. In 2008, Brooks, as homeowner and Diamond Sevens' project manager, assumed oversight of the home automation implementation from Larkin. Brooks had numerous troubleshooting issues with IHA and refused to release payment for the remainder of the contract until the system worked as intended. IHA president, Onstott, said the final repairs consisted of only two problems that he was aware of, an issue with the audio system and the pool controller. Onstott also insisted these problems were manufacturing issues and not deficiencies in IHA's workmanship or installation. In contrast, Brooks testified that lighting was about the only component of the automated system that worked properly and there were issues with virtually everything else.

¶ 9 In January 2009, Diamond Sevens filed suit in Tulsa County, alleging breach of contract, breach of warranty, revocation of acceptance and negligence. IHA responded to the petition, claiming Diamond Sevens was bound by the arbitration clause contained in the system contract, as well as the venue selection clause, designating Payne County as the venue. From the trial court's order denying the motion to compel arbitration and motion to dismiss IHA brought this appeal.

¶ 10 Appellant, IHA, first asserts Diamond was a party to the system contract by virtue of Larkin's apparent authority to bind Diamond Sevens. Whether such an agency relationship exists is a question of fact. *Tulsa Co. Truck & Fruit Growers Ass'n v. McMurphey*, 1939 OK 250, 90 P.2d 927, 929; *Love v. Williams*, 1934 OK 544, 37 P.2d 944, 946. However, whether or not an enforceable agreement to arbitrate exists is a question of law and is reviewed *de novo*. *Oklahoma Oncology & Hematology v. U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936, 944.

¶ 11 Arbitration is a product of contract and will not be forced on a party who has not agreed to it. *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936, 944–45.

1. The system contract is dated October 25, 2004, but was signed by Larkin on March 23, 2005.

[T]he courts will not impose arbitration upon parties where they have not agreed to do so. The courts will enforce arbitration agreements according to the terms of the parties' contract, as "[a]rbitration is a matter of consent, not coercion." To assure that the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit a particular dispute to arbitration. The courts will not require a party to submit a controversy to arbitration where it has not been so agreed.

*Id.* (citations omitted). In order to effectively bind Diamond Sevens to the system contract, IHA must establish the agency relationship between Larkin and Diamond Sevens, because no Diamond principal signed the system contract.

¶ 12 "Apparent authority of an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing." *Rosser–Moon Furniture Co. v. Oklahoma State Bank,* 1943 OK 89, 135 P.2d 336, 338. In order for a third party to establish apparent authority and hold the principal responsible for the acts of his agent, the party asserting the existence of the agency relationship must show a) conduct of the principal which demonstrates an agency relationship exists, b) reliance by a third person on the principal's conduct and c) the third party changes its position due to that reliance. *Id.* IHA claims all three elements exist in this case, effectively making Larkin the agent of Diamond Sevens.

¶ 13 An agency relationship created under the theory of apparent authority is not established on the representations or statements of the putative agent alone. In fact, the conduct of the principal is paramount when establishing that such a relationship exists. *Stephens v. Yamaha Motor Co., Ltd.,* 1981 Ok 42, 627 P.2d 439, 441. To this end, IHA complains that Brooks, as the principal for Diamond Sevens, 1) failed to repudiate

Larkin's actions when Larkin acted as if he had authority to act for Diamond Sevens, 2) did not warn IHA that Larkin or Larkin Co. was not Diamond's agent, 3) did not ask to review the contracts Larkin signed, 4) refused to sign change orders, 5) admitted Larkin was expected to get the project done, and 6) participated in selecting components of the system and order changes, as a very involved owner. IHA claims these actions and inactions on the part of Brooks led IHA to reasonably believe that Larkin was Diamond's agent.

¶ 14 However, the trial court reasoned that Brooks never acted as anything other than a homeowner and never made any representations about Larkin or the Larkin Co. that would have led IHA to believe Larkin was something different than the architect or general contractor, making IHA the subcontractor. Brooks hired the contractor, the Larkin Co., to avoid getting involved in the search for subcontractors and reviewing of contracts, as any homeowner building a new home might do. Under Oklahoma law, a contractor is not the homeowner's agent. *Hall v. North Plains Concrete Serv., Inc.,* 1966 OK 221, 425 P.2d 941 ("[the] mere existence of a contract between a landowner and one whom he has contract[ed] with to make improvements on his land in nowise establishes agency.").

¶ 15 This appeal is not about whether IHA has a contract; it is about whether or not IHA has a contract with Diamond Sevens that requires Diamond Sevens to arbitrate this dispute.

¶ 16 In *Welling v. American Roofing and Sheet Metal Co., Inc.,* 1980 OK 131, 617 P.2d 206, the homeowner was characterized as very involved, just as Brooks was in this case. There was direct contact between subcontractor and homeowner, including negotiations between homeowner and subcontractor for additional roofing outside the general contractor's project. However, this did not change the roofer's status in relationship to the homeowner beyond that which he already possessed, subcontractor working for the general contractor.[2] *Id.* at 209. Similarly,

---

2. In Oklahoma, a "sub-contractor is one who has     entered into a contract, express or implied, for

IHA remains the subcontractor of the Larkin Co. that hired IHA. All the meetings with Brooks and Yearwood about what the system needed to do, how much it would cost and how it needed to be changed did not change the nature of the relationship IHA had with Brooks or Diamond Sevens; IHA remained always a subcontractor. The invoicing and payment structure between homeowner and subcontractor was also similar in *Welling*, where the bills were handled through the general contractor. In this case, IHA billing was addressed directly with the Larkin Co. and not Diamond Sevens.

¶ 17 The trial court determined Brooks' actions in taking an active roll in selecting system features and his inaction, failing to articulate for IHA's benefit the nature or scope of Larkin's authority, were insufficient to establish agency or justify IHA's reliance on these acts. The court's evaluation of these facts is supported by this record.

¶ 18 Finally, whether IHA acted to its detriment in relying on Brooks' failure to explain that Larkin was not his agent does not operate to further IHA's apparent authority claim. Apparent authority requires the presence of all three elements, the first two of which are missing. As a result, IHA's apparent authority argument collapses before it is necessary to examine IHA's detrimental reliance.

¶ 19 The general contractor provides the link between the homeowners and subcontractors and it is normally the general contractor who has the contractual relationship with the owners. Working as a subcontractor, without more, does not bring about a contractual relationship with the home-owners, hence the need for IHA to establish the agency relationship between Larkin[3] and Diamond in this case, something IHA failed to do. *Cox v. Curnutt,* 1954 OK 150, 271 P.2d 342, 344.

¶ 20 IHA's second assertion is that Diamond Sevens ratified the system contract and thereby became a party to it, including the arbitration clause. Ratification is akin to IHA's agency argument, because it involves a principal who voluntarily accepts the benefits of a contract executed by the purported agent, although execution of the contract occurred without the principal's authority. The principal who accepts the benefits of such a contract must assume all the burdens of that agreement, as well as the benefits. *Amazon Fire Ins. Co. v. Bond,* 1917 OK 96, 165 P. 414, 417. However, the principal must also be aware of all material facts and circumstances relative to the unauthorized transaction in order to ratify those terms.[4] In addressing this requirement, IHA insists Brooks was willfully ignorant of the contract, making him responsible for the arbitration agreement, because he should have been aware of it and was not.

¶ 21 Without something more, Oklahoma law recognizes no agency between a home-owner and his general contractor. *Hall,* 425 P.2d at 945. To support ratification here, IHA must demonstrate conduct on the part of Brooks that demonstrates ignorance different than that which the usual homeowner would engage in when dealing with the contractors and subcontractors building his house. Otherwise, the relationship can never escape the limits of *Hall,* where homeowner and contractor are not principal and agent.

the performance of an act with a person who has already contracted for its performance." *Welling,* 617 P.2d at 208.

3. Some portion of IHA's argument on appeal dealt with the nature of Larkin's signatures on the two IHA contracts and whether the signatures were Larkin's personal signatures or done in Larkin's corporate capacity, d/b/a the Larkin Co. The actions of Brooks are insufficient to establish agency with respect to either Larkin personally or the Larkin Co. Therefore, the distinction is not vital to the questions presented in this appeal.

4. Ratification, as it relates to the law of agency, may be defined as the express or implied adop-tion and confirmation by one person of an act or contract performed or entered into in his behalf by another, who at the time assumed to act as his agent in doing the act or making the contract without authority to do so. And it is stated that as a general rule, in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding, it is essential that the principal have full knowledge of all material facts and circumstances relative to the unauthorized act or transaction, or that someone authorized to represent the principal, except the agent, have such knowledge, unless the principal is willfully ignorant or improperly refrains from seeking information. *Amazon Fire Ins. Co.,* 165 P. at 418.

IHA's attempt to claim Brooks was willfully ignorant due to his deference to the contractor and unwillingness to immerse himself in the contractual and legal maneuvering of the construction business, were viewed by the trial court as evidence that Brooks behaved as an ordinary homeowner would. The court did not consider Brooks' actions as evidence of willful indifference. The trial court's evaluation of these facts, finding no willful ignorance on the part of Brooks, does not demonstrate error.

¶ 22 We find the trial court was correct in its determination that there was no agreement between Diamond Sevens and IHA to arbitrate disputes relating to the home automation system.

¶ 23 Having found Diamond Sevens was not a party to the system contract by virtue of agency, we agree with the trial court's disposition of the venue question as well. Diamond Sevens and IHA had no agreement to address any of their disputes in Payne County.

¶ 24 Due to the fact IHA was not the prevailing party below or on appeal, we deny IHA's request for attorney fees and costs. Diamond Sevens requested attorney fees pursuant to 20 O.S.2001 § 15.1, claiming IHA's appeal was frivolous and devoid of any legitimate legal or factual basis. "A patently frivolous appeal is one having no legitimate legal or factual basis and is so totally devoid of merit as to be regarded as facially unworthy of consideration. All doubts concerning whether the appeal is frivolous must be resolved in the appellant's favor." *King Mfg. v. Meadows,* 2005 OK 78, 127 P.3d 584, 590. IHA's appeal was not frivolous or lacking in merit to warrant an award of fees under § 15.1. Diamond Sevens' request for appeal-related attorney fees is denied.

¶ 25 The order of the trial court denying IHA's motion to compel arbitration and motion to dismiss Plaintiff's petition is AFFIRMED.

BELL, V.C.J., and MITCHELL, J., concur.