2012 OK CIV APP 70

**APACHE TRIBE OF OKLAHOMA,**
**Plaintiff/Appellant,**

v.

**John H. GRAVES, Defendant/Appellee,**

and

**Alonzo Chalepah, Defendant.**

**No. 109,837.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

April 25, 2012.

Certiorari Denied June 25, 2012.

Jon E. Brightmire, Bryan J. Nowlin, Doerner, Saunders, Daniel & Anderson, LLP, Tulsa, Oklahoma, for Plaintiff/Appellant.

David A. Cheek, Jeff M. Love, Cheek & Falcone, PLLC, Oklahoma City, Oklahoma, for Defendant Graves/Appellee.

JANE P. WISEMAN, Judge.

¶ 1 Plaintiff Apache Tribe of Oklahoma appeals from an order of the trial court granting summary judgment in favor of John H. Graves. Pursuant to Supreme Court Rule 1.36, 12 O.S.2011 ch. 15, app. 1, we review this record without appellate briefing. After review, we conclude that genuine issues of material fact remain precluding the entry of summary judgment. Accordingly, we reverse and remand for further proceedings.

## FACTS

¶ 2 The Tribe owns and operates the Silver Buffalo Casino. Graves is an attorney and was formerly a member of the Apache Gaming Board of Directors. In July 2007, as Chairman of the Gaming Board of Directors, he had check signing authority for the Silver Buffalo Casino bank accounts. In July 2007, Alonzo Chalepah was Chairman of the Apache Business Committee which, according to the petition, "is the Apache Tribe's governmental body responsible for the day to day operation of the Tribe." Chalepah also had check writing authority as head of the Business Committee.

¶ 3 According to the Tribe's petition, Rick McKee was employed at the Silver Buffalo Casino as head of security from March 26,

2007, until January 12, 2009, and became involved in the following scheme:

> Between January 2006 and May 2007, McKee allegedly obtained vehicles and vehicle titles from Rex Bottom under a scheme to defraud and under false pretenses. McKee obtained the vehicles and vehicle titles by promising to sell them to buyers in California and then return the proceeds to Bottom. The value of the property McKee defrauded from Bottom was $38,000.00. These allegations are contained within the Information filed in *State of Oklahoma v. Rick E. McKee*, CF–2007–100, in the District Court for Caddo County, State of Oklahoma, in which McKee was charged with a felony.

Graves provided McKee legal representation at the initial arraignment hearing in his criminal proceedings which were subsequently dismissed on July 19, 2007, based on the "Best interest of justice Restitution & Court Costs have been paid in full." The day before the dismissal, the Tribe provided McKee with a check in the amount of $40,000, which Graves and Chalepah had both signed. The check was drawn on an account held by the Tribe on which both Graves and Chalepah had authority to write checks.

### PROCEDURAL BACKGROUND

¶ 4 The Tribe commenced the present lawsuit alleging Graves' actions constituted (1) "breach of fiduciary duty/duty of loyalty" by "obtaining improper benefits for his client McKee in a criminal matter in which McKee was charged with a felony," (2) conversion of "property belonging to the Tribe to [his] own use and control by providing funds to benefit Graves' client McKee," (3) civil conspiracy as Graves conspired with Chalepah and McKee "to injure the Apache Tribe by engaging in the tortious and unlawful acts described in this Petition," and (4) professional malpractice for violating his duty of competency and loyalty owed to the Tribe "by using his office as Chairman of the Gaming Board to divert funds to his criminal client McKee and failing to advise the Apache Tribe that the advance was unlawful and undocumented."

¶ 5 Graves denied these allegations and counterclaimed against the Tribe for recoupment and indemnity. Graves argued that the Tribe "by law and by previous agreement has agreed to indemnify [him] for all claims, causes of actions, and damage claims asserted against him by virtue of any actions he undertook while acting on behalf of the Tribe." Graves further asserts that the Tribe, "by virtue of a valid Resolution authorized the extension of the loan to McKee and by virtue of a valid Resolution directed that Graves sign the check which constituted the loan to McKee." Graves contends that the Tribe, as a result, cannot assert these claims against him because they violate the Tribe's Resolutions. Graves thus seeks recoupment and/or indemnification for the "identical amount of any and all damages which the Tribe may be awarded herein against John Graves including, but not limited to all costs of this action and a reasonable attorney's fee."

¶ 6 Graves then filed two summary judgment motions. In the first motion, he argued the Tribe's conversion claim failed as a matter of law because "the issuer of a check may not bring a cause of action for conversion." The Tribe contends Graves misinterprets the law on this issue explaining its conversion claim does not involve conversion of a check but rather conversion of the funds by Graves and Chalepah.

¶ 7 In his second motion for summary judgment, Graves asserts that because the Tribe engaged in several acts ratifying the loan, it cannot now claim the check is anything other than a loan making the entry of summary judgment in his favor proper on all claims against him. Graves contends that "[h]aving ratified the check as being a loan, the Tribe, as a matter of law, is prohibited from now claiming it was an act of conversion, breach of fiduciary duty, professional malpractice or civil conspiracy."

¶ 8 In response, the Tribe contends fact issues remain "as to each element of its professional negligence, breach of fiduciary duty, and civil conspiracy claims against [Graves]" and that "the Tribe has not released [Graves] from any liability arising from these claims."

¶ 9 The trial court granted Graves' motion for summary judgment holding that this was "a loan authorized by the Apache Tribe and ratified later, that is the acts of the—Mr. Chalepah and Mr. Graves, ratified by the Tribe." This ruling disposed of all claims against Graves. The trial court also found:

> [P]ursuant to 12 O.S. section 994.A that this Order shall constitute a final judgment in favor of [Graves] and against the Tribe as to all claims asserted by the Tribe against [Graves], the Court having made the express determination that there is no just reason for the delay of the entry of a final judgment in favor of [Graves] and the Court having expressly directed the filing of a final judgment in favor of [Graves] against [the Tribe].

¶ 10 The Tribe appeals.

### STANDARD OF REVIEW

¶ 11 Because summary judgment resolves issues of law, we review a district court's grant of summary judgment *de novo* "pursuant to the plenary power of the appellate courts and without deference to the trial court." *Glasco v. State ex rel. Dep't of Corr.*, 2008 OK 65, ¶ 8, 188 P.3d 177, 181. We will not reverse a grant of summary judgment when the record on appeal establishes no substantial controversy of material fact and that one party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Grp.*, 1999 OK 7, ¶ 7, 976 P.2d 1043, 1045.

### ANALYSIS

¶ 12 Graves' primary argument is that the Tribe ratified his act of signing the check thereby eliminating as a matter of law its ability to claim that the act constituted conversion, breach of fiduciary duty, professional malpractice, or civil conspiracy.

 ¶ 13 "Ratification ... may be defined as the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another, who at the time assumed to act as his agent in doing the act or making the contract without authority to do so." *Diamond Sevens, L.L.C. v. Intelligent Home*

*Automation, Inc.*, 2010 OK CIV APP 131, n. 4, 245 P.3d 1260 (citing *Amazon Fire Ins. Co. v. Bond*, 1917 OK 96, ¶ 13, 165 P. 414, 418).

> [Generally,] in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding, it is essential that the principal have full knowledge of all material facts and circumstances relative to the unauthorized act or transaction, or that someone authorized to represent the principal, except the agent, have such knowledge, unless the principal is willfully ignorant or improperly refrains from seeking information.

*Id.*

 ¶ 14 Furthermore, a principal which, "after acquiring knowledge of certain unauthorized wrongful acts by its agent— accepts and retains the benefits derived from such wrongful acts, is deemed by law to have ratified the tortious acts, and becomes liable as though authority had been given." *Estate of Bras v. First Bank & Trust Co. of Sand Springs*, 1991 OK CIV APP 68, ¶ 18, 821 P.2d 387, 391.

> Where an alleged principal claims that a person who negotiated a business deal was not in fact his agent at all, but was merely a volunteer, a self-constituted agent, or an agent for another, he will nevertheless be held bound by whatever obligations or liabilities were assumed by his pretended agent in consummating the transaction, if such principal insists on retaining the fruits of the unauthorized transaction.

*D.W.L., Inc. v. Goodner–Van Eng'g Co.*, 1962 OK 121, ¶ 13, 373 P.2d 38, 42.

¶ 15 However, "[e]ven if a principal ratifies an agent's unauthorized act, the agent is not released from liability to the principal if: (1) the principal 'is obligated to affirm the act in order to protect his own interests;' or (2) the principal 'is caused to ratify by the misrepresentation or duress of the agent.'" *Foley Co. v. Scottsdale Ins. Co.*, 28 Kan.App.2d 219, 15 P.3d 353, 358 (2000)(quoting Restatement (Second) of Agency § 416 (1957)); *cf. Delano v. Kitch*, 663 F.2d 990, 999 (10th Cir.1981)("Ratification is not effective in favor of the fiduciary and against the beneficia-

ry if the beneficiary must act to protect his or her own interests . . . .").

¶ 16 The Tribe does not dispute the following material facts: (1) a check was made payable to Rick McKee in the amount of $40,000 on July 18, 2007; (2) on November 17, 2009, the Apache Business Committee passed Resolution # 11–17–09–17, "Resolution Approving Stipulation and Confession of Judgment of Rick McKee"; (3) on January 5, 2010, the Apache Business Committee passed Resolution # 1–05–10–01, "Resolution Regarding Loan to Rick McKee"; (4) John Pangburn testified that the Tribe's Resolutions were effective when passed and are still effective today and that he is unaware of any procedure adopted by the Tribe prohibiting making such a loan; (5) on January 5, 2010, the Tribe entered into a promissory note with Rick McKee for the repayment of the $40,000; (6) on March 3, 2010, the Tribe sued Rick McKee to recover what it identified as a $40,000 loan; (7) on November 25, 2009, the Tribe and McKee entered into a "Stipulation and Confession of Judgment" for the $40,000 indebtedness; and (8) the Tribe deducted $2,625 from McKee's salary through March 24, 2010, for repayment of the $40,000 loan.

¶ 17 Although the Tribe does not dispute these facts, it does dispute that they constituted a ratification of Graves' "various breaches of duty" because, according to the Tribe, all of these actions were undertaken in order to comply with the National Indian Gaming Commission's (NIGC) "investigation and to protect the Tribe from a penalty for the unauthorized use of net gaming revenues." The Tribe presents a letter from the NIGC which states in part as follows:

> The Tribe's position is that the $40,000 payment was a loan to Mr. McKee to be paid back within 45 days, as evidenced by the check memo note stating "45-day advance." However, the Tribe has not produced any contemporaneous loan agreement, promissory note, or other document to corroborate the position that this transaction was intended to be a loan at the time it was given. In addition, there was

no tribal loan program in place under which such a loan could have been granted. *Moreover, Mr. McKee made no repayments to the Tribe, and the Tribe made no effort to collect any repayments from Mr. McKee, until after the NIGC began its investigation in 2009.* Under these circumstances, I must conclude that the $40,000 payment to Rick McKee was not a loan, and my strong belief is that the Apache Tribe would have never received any repayment from Mr. McKee had the NIGC not opened an investigation into this matter.

> . . . .

> In this case, $40,000 of the Tribe's loan was not used for economic development or any other legitimate use of net gaming revenues under [the Indian Gaming Regulatory Act (IGRA) ]. Therefore, the Tribe's use of net gaming revenue to pay back the loan was, and continues to be, a violation of IGRA.

> . . . .

> As to the Tribe's IGRA violation, I am aware of the corrective actions that the Tribe has begun to undertake to attempt to mitigate the misuse of net gaming revenue. First, the Tribe is now pursuing repayment of the $40,000 from Rick McKee . . . . Second, the Tribe is developing a tribal loan program.

> . . . .

> If the Apache Tribe obtains complete payment of the $45,000 [1] owed from Rick McKee and adopts a tribal loan program that will prevent loan abuses, then the NIGC Enforcement Division will close this investigation without seeking a notice of violation.

(Emphasis added.) The Tribe also attached to its summary judgment response an affidavit from John Pangburn, general manager of the Silver Buffalo Casino, who testified as follows:

> 6. The subsequent Apache Business Committee resolutions 11–17–09–17 and 1–05–10–01 were an attempt by Alonzo Chalepah

---

1. This is referred to in the letter as the amount of principal and interest McKee agreed to pay the

Tribe by March 1, 2010.

and his advisors to re-characterize the payment to Rick E. McKee as a loan [and] were enacted only after and in response to the NIGC investigation listed above.

¶ 18 After review of the record, we conclude the question remains unresolved as to whether the Tribe's acts constitute ratification of the $40,000 check written to McKee which relieves Graves from liability or constitute acts performed to prevent the imposition of a penalty after the NIGC initiated its investigation into conduct it considered illegal regarding tribal funds. We agree with the Tribe's assertion that in this lawsuit, it is not seeking to enforce any contract with McKee which Graves asserts the Tribe ratified. The Tribe is seeking compensation for breaches of duty it contends Graves owed to the Tribe.

¶ 19 The parties do not cite and we do not find any Oklahoma precedent on the proposition in the Restatement of Agency discussed above regarding a principal confronting the necessity to ratify its agent's acts in order to protect its own interests, but we adopt the principal of law found in § 416.[2] Restatement (Second) of Agency § 416. Because we adopt § 416, there is a fact question to be determined in further proceedings as to whether the Tribe was obligated to affirm Graves' actions in authorizing the check to McKee in order to protect its own interests vis-à-vis the NIGC's investigation, which would thus render any ratification ineffective

to release Graves from unauthorized acts. "If reasonable minds might reach different conclusions when viewing the evidentiary materials (even those which are undisputed), summary judgment is inappropriate." *Winston v. Stewart & Elder, P.C.*, 2002 OK 68, ¶ 10, 55 P.3d 1063, 1067.

¶ 20 We thus reverse the trial court's granting of Graves' motion for summary judgment and remand for further proceedings. Based on this conclusion, we will not address the remaining issues urged in the Tribe's petition in error.

## CONCLUSION

¶ 21 We conclude Graves was not entitled to judgment as a matter of law because material disputed questions of fact remain. The decision of the trial court is reversed and remanded for further proceedings.

¶ 22 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, C.J., and BARNES, P.J., concur.

---

2. Restatement (Second) of Agency § 416, provides in part:

The ratification or other affirmance by the principal of an unauthorized act done by an agent acting in excess of his power to bind the principal releases the agent from liability in damages to the principal for having violated a duty to him, except when the principal:
(a) is obliged to affirm the act in order to protect his own interests....