(15 P.3d 353)

No. 84,018

FOLEY COMPANY and ROYAL INSURANCE CO., *Appellees,* v. SCOTTSDALE INSURANCE CO., *Appellant/Cross-appellee,* and CRETCHER-LYNCH & COMPANY and ALL TEMPERATURE INSULATION, INC d/b/a AT ABATEMENT SERVICES, INC., *Appellees,* v. MONTGOMERY & COLLINS, INC., and HOWARD FELBER, *Appellees/Cross-appellants.*

Opinion filed December 1, 2000.

*Joel W. Riggs* and *F.C. McMaster,* of McMaster & McMaster, of Wichita, for appellant/cross-appellee Scottsdale Insurance Company.

*David T. Holt* and *Andrew H. McCue,* of Campbell, Holt & Associates, of Kansas City, Missouri, and *Mark A. Corder,* of Olathe, for appellee Cretcher-Lynch & Company.

*Stuart K. Shaw* and *James F. Duncan,* of Armstrong Teasdale LLP, of Kansas City, Missouri, for appellees/cross-appellants Montgomery & Collins, Inc., and Howard Felber.

Before GREEN, P.J., PIERRON, J., and RAWLEY JUDD DENT II, District Judge, assigned.

GREEN, J.: Scottsdale Insurance Company (Scottsdale) appeals from a summary judgment entered against Scottsdale in its cross-claims against Montgomery & Collins, Inc. (MCI), Howard Felber, and Cretcher-Lynch & Company (CLC) for breach of a general agency agreement. On appeal, Scottsdale argues that it is entitled to indemnity from MCI, Felber, and CLC for a loss resulting from the unauthorized placement of insurance coverage. We disagree and affirm.

This is the second cause of action related to a construction accident that occurred in 1992. The first cause of action was brought by the survivors of John R. Bryant, who was injured at a construction site due to the negligent operation of a crane. The Bryant litigation was brought against two subcontractors on the construction project, All Temperature Insulation, Inc. (All Temp) and APAC Kansas, Inc. (APAC). APAC joined the general contractor of the project, Foley Company (Foley), as a third-party defendant, alleging that Foley was contractually bound to hold APAC harmless from the suit by Bryant. Judgment was entered against APAC and All Temp. APAC then sought judgment against Foley for the amount of the judgment, attorney fees, and costs associated with the defense of the action. Summary judgment was entered in favor of Foley on the indemnification claim but was later reversed by this court in *Estate of Bryant v. All Temperature Insulation, Inc.,* 22 Kan. App. 2d 387, 916 P.2d 1294, *rev. denied* 260 Kan. 992 (1996).

This second cause of action was brought by Foley and its insurance carrier, Royal Insurance Company, against All Temp and All Temp's insurance carrier, Scottsdale, and an insurance broker, CLC, for indemnification of some of the amounts paid in the Bryant litigation.

Under All Temp's construction contract with Foley, All Temp agreed to name Foley as an additional insured on its liability policy.

With the assistance of Scottsdale's general agent, MCI, and through MCI's employee, Felber, Foley was added as an additional insured on All Temp's policy with Scottsdale. At the time Foley was added as an additional insured on the All Temp policy, CLC was acting in an agency capacity on behalf of MCI.

MCI, as a general agent for Scottsdale, was authorized to issue certificates of insurance with binding authority for Scottsdale. Certificates of insurance for additional insureds were to be sent by MCI to Scottsdale for approval within 20 days. Although the general agency agreement prohibited MCI from delegating its authority to any other party except as authorized in writing by Scottsdale, MCI and CLC agreed that CLC could issue certificates of insurance naming general contractors, such as Foley, on All Temp's policy with Scottsdale, subject to MCI's approval. Under MCI's agreement with CLC, CLC could issue such insurance certificates only if it did not increase the risk to Scottsdale.

While the All Temp policy was in full force and effect, Bryant was injured. Notification of the injury was sent to MCI, which hired a claims investigator to look into the matter and report to Scottsdale. Sometime after Bryant's injury, a copy of the certificate of insurance naming Foley as an additional insured was forwarded to Scottsdale by MCI.

After Scottsdale's claims department received the report from the investigator hired by MCI and the belated certificate of insurance naming Foley as an additional insured, Scottsdale did not cancel the All Temp policy. The policy was later audited and All Temp was charged an additional premium of approximately $23,000 based on All Temp's actual total payroll for the policy periods. Scottsdale renewed the All Temp policy for 3 policy years after Bryant's injury, including the years the Bryant litigation was pending.

Shortly after the Bryant litigation was filed, a demand was made by Foley upon Royal and Scottsdale to defend APAC and Foley in the Bryant case. Scottsdale failed to respond and Royal ultimately provided the defense.

During the pendency of the appeal in the Bryant litigation, Foley and Royal commenced this action against All Temp, Scottsdale,

and CLC. The trial court concluded all of the claims and cross-claims filed in the case by ruling on dispositive motions. The trial court found that Scottsdale and Royal were co-insurers and that Scottsdale was liable for 50% of the judgments rendered against APAC and Foley in the Bryant litigation, as well as 50% of the attorney fees for the defense of APAC and Foley in the Bryant litigation. The trial court entered a judgment against Scottsdale and in favor of Foley and Royal in the total amount of $79,643.24. Scottsdale paid the judgment.

Scottsdale filed cross-claims against MCI, Felber, and CLC (hereinafter collectively referred to as the third-party defendants). Scottsdale alleged that MCI and Felber breached the general agency agreement between Scottsdale and MCI. Scottsdale's claim against CLC was founded upon a working contract between MCI and CLC for the issuance of the All Temp policy and the certificate of insurance for Foley. Scottsdale alleged that it was entitled to indemnity because CLC and MCI were not authorized to add Foley as an additional insured on the All Temp policy.

The third-party defendants moved for summary judgment against Scottsdale on Scottsdale's cross-claims. The trial court granted the motions for summary judgment on the basis of Scottsdale's ratification of their allegedly unauthorized acts.

Scottsdale appeals the trial court's grant of summary judgment. MCI and Felber cross-appeal the trial court's grant of summary judgment in favor of Foley related to coverage under the policy for attorney fees incurred by APAC in defending the Bryant litigation.

Before reaching the merits of this case, it is first necessary to determine whether this court has jurisdiction. MCI and Felber argue that because Scottsdale has paid the full amount of the judgment entered in favor of Foley and Royal, Scottsdale has acquiesced in the judgment and the appeal should be dismissed.

To support their argument, MCI and Felber cite *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 866 P.2d 1044 (1994). The *Varner* court held that "[i]n order for an appellate court to hold that a party has acquiesced in a judgment, it must be shown that the appellant has either assumed burdens or accepted benefits of *the judgment con-*

*tested in the appeal.*" (Emphasis added.) 254 Kan. 492, Syl. ¶ 1. Here, although Scottsdale has assumed the burden of the judgment rendered in favor of Foley and Royal, that judgment is not contested on appeal. Instead, the judgment contested by Scottsdale on appeal is the summary judgment entered in favor of the third-party defendants and against Scottsdale on Scottsdale's indemnity claim. Because Scottsdale has not adopted a position that is inconsistent with the judgment contested on appeal, Scottsdale has not acquiesced in that judgment and the appeal is retained.

On appeal, Scottsdale argues that the trial court erred in granting summary judgment against it and in favor of the third-party defendants because Scottsdale is entitled to indemnity from those parties. Scottsdale claims that the trial court erred in not allowing the indemnification claims to go to trial because the trial court resolved factual disputes against Scottsdale so that it could rule on its claims as a matter of law. Specifically, Scottsdale alleges that the trial court erred in finding that it ratified the actions of the third-party defendants. In the alternative, Scottsdale argues that even if it failed to repudiate the actions of the third-party defendants regarding the addition of Foley to All Temp's policy, the third-party defendants are not relieved from their breach of contract.

Our Supreme Court recently noted the standard of review for a motion for summary judgment:

"The standard of review for a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

It is first necessary to determine whether the trial court erred in finding that Scottsdale ratified the allegedly unauthorized actions of the third-party defendants. Under agency law, once a principal knows of an agent's unauthorized actions, it cannot sit back and see if it will benefit or suffer from the agent's actions. Instead, a principal who receives notice of an unauthorized act of an agent

must promptly repudiate the agent's actions or it is presumed that the principal ratified the act. Ratification is the adoption or confirmation by a principal of an unauthorized act performed on its behalf by an agent. *Theis v. duPont, Glore Forgan Inc.*, 212 Kan. 301, 304-05, 510 P.2d 1212 (1973).

The trial court correctly determined based on uncontroverted facts that Scottsdale did not repudiate the acts of the third-party defendants until 2 years after they occurred, at the absolute earliest. Scottsdale knew that Foley had been added as an additional insured on All Temp's policy within months after the certificate of insurance was issued. Despite this knowledge, Scottsdale did not cancel the policy or even announce its intention to dispute Foley's status as an additional insured. Instead, Scottsdale continued to renew the policy for several additional policy years. These renewals continued even after Foley asked Scottsdale to defend it in the Bryant litigation. Scottsdale did not disallow by word or action the addition of Foley to the policy. In fact, the first time Scottsdale indicated that it was denying Foley's status as a named insured was when it filed its answer in this case, years after it knew Foley was an additional insured on All Temp's policy.

Scottsdale took a position similar to that denounced by the *Theis* court. *Theis* noted that "the requirement of prompt repudiation is to prevent an investor from withholding his disapproval until the market has taken a turn for the worse, and then deciding to assert the alleged wrongdoing." 212 Kan. at 305. Here, Scottsdale withheld disapproval of the third-party defendants' actions until it became likely that Scottsdale would suffer a loss as a result of those parties' actions. By failing to promptly repudiate the allegedly unauthorized actions, Scottsdale was able to sit back and quietly accept any benefits resulting from the addition of Foley to All Temp's policy, without paying Foley for the losses sustained under the policy. As a result, we find that the trial court did not err in determining that Scottsdale ratified the third-party defendants' allegedly unauthorized acts.

The next question is whether Scottsdale has a claim against the third-party defendants for breach of contract even though Scottsdale failed to repudiate those parties' allegedly unauthorized ac-

tions. Resolution of this issue requires the application of agency law. The general rule is that an "agent may be subject to liability to his principal because he has made an unauthorized contract for which his principal is liable." Restatement (Second) of Agency § 383, comment e (1957). However, "[t]he ratification or other affirmance by a principal of an unauthorized act done by an agent in excess of his or her power to bind the principal releases the agent from liability for damages to the principal for having violated a duty to the principal." Restatement (Second) of Agency § 416 (1957). The following is an example of when an agent is released from liability to the principal:

"A, agent for P for delivering goods, is directed to deliver them only upon receipt of cash. A delivers the goods to T on one month's credit, the transaction not binding to P. Upon learning of A's lack of authority, T offers to return the goods. P, however, says that he is satisfied with the transaction. Subsequently, T becomes insolvent and does not pay for the goods. A is not liable to P." Restatement (Second) of Agency § 416, illus. 1 (1957).

Although this is apparently an issue of first impression in Kansas, other jurisdictions have addressed whether an agent could be held liable where the principal ratified the agent's arguably unauthorized actions. For example, *Barta v. Kindschuh*, 246 Neb. 208, 518 N.W.2d 98 (1994), addressed whether the sellers of a home were entitled to indemnification from their real estate agent for damages suffered by the sellers for an alleged misrepresentation regarding the condition of the home. The Nebraska Supreme Court affirmed the trial court's grant of summary judgment in favor of the real estate agent. The *Barta* court held that even if the real estate agent exceeded his authority by failing to note the correct information as to the condition of the home on a form provided to the buyers, the sellers acquiesced in and ratified the agent's acts when the sellers read and signed the form that included misrepresentations regarding the condition of the home. 246 Neb. at 214-15.

Other cases have held similarly. See, *e.g., Brooks v. January*, 116 Mich. App. 15, 321 N.W.2d 823 (1982) (holding that because a dissident faction of a church congregation ratified their pastor's unauthorized sale of property, the pastor was relieved from liability to the church); *Southwest Title Ins. Co. v. Northland Bldg.*, 542

S.W.2d 436 (Tex. App. 1976), *rev'd in part on other grounds* 552 S.W.2d 425 (Tex. 1977) (holding that because the title insurance company ratified its agent's arguably unauthorized actions, the agent could not be held liable to the title insurance company); *Rakestraw v. Rodrigues*, 8 Cal.3d 67, 104 Cal. Rptr. 57, 500 P.2d 1401 (1972) (holding that because a wife ratified forgery of her name on a deed of trust, the agent was relieved of liability to the principal).

We find that Scottsdale's ratification of the third-party defendants' allegedly unauthorized actions released those parties from liability to Scottsdale for having violated any duties those parties had to Scottsdale. After Bryant's accident, Scottsdale knew and was capable of understanding that the third-party defendants' allegedly unauthorized actions added Foley as an additional insured to the All Temp policy. Despite this knowledge, Scottsdale failed to repudiate the third-party defendants' actions. The law does not permit a principal to ignore violations of its instructions to its agents, but yet receive indemnification from those parties for their unauthorized actions.

Nevertheless, Scottsdale argues that exceptions to the release of an agent's liability for breach of contract with a principal are applicable in the instant case. Even if a principal ratifies an agent's unauthorized act, the agent is not released from liability to the principal if: (1) the principal "is obligated to affirm the act in order to protect his own interests"; or (2) the principal "is caused to ratify by the misrepresentation or duress of the agent." Restatement (Second) of Agency § 416 (1957). According to Scottsdale, these exceptions are applicable because it was forced to ratify the third-party defendants' actions in order to protect its own interests or, alternatively, was forced to ratify because the third-party defendants failed to disclose their breaches until after liability attached under the policy.

The first exception, however, is not applicable in the instant case. The following is an example of when the first exception is applicable:

"Purporting to act as agent for P but without power to bind him, A lends money to T, taking a note in P's name. T uses the money and becomes insolvent before

P learns the facts. P files a claim in bankruptcy, based on the note, against T's estate, in order to participate in a fifty per cent dividend. A is subject to liability to P for P's loss." Restatement (Second) of Agency § 416, illus. 2 (1957).

Clearly, the present case is distinguishable from this illustration. Scottsdale's ratification of the third-party defendants' allegedly unauthorized actions did not protect any of Scottsdale's interests. Because Scottsdale was not obligated to affirm the third-party defendants' actions to protect its own interests, the third-party defendants are not subject to liability for Scottsdale's losses under the first exception.

In addition, the second exception does not apply to this case. Scottsdale argues that it did not become aware of its increased risk until after Bryant's accident and by then it was too late to repudiate the third-party defendants' actions. However, even if it was too late for Scottsdale to repudiate the third-party defendants' actions after Bryant's accident in order to avoid liability to Foley, Scottsdale nevertheless could have repudiated the third-party defendants' actions for purposes of Scottsdale's indemnity claim against those parties. Had Scottsdale repudiated the third-party defendants' actions when it learned Foley was named as an additional insured on All Temp's policy, Scottsdale could have collected from the third-party defendants the amount it would be required to pay Foley as a result of Bryant's accident, provided the third-party defendants were Scottsdale's agents and their actions were unauthorized. Because Scottsdale failed to timely repudiate, it must be bound by the third-party defendants' actions.

Finally, at oral argument, Scottsdale argued that the holding in *Hays v. Farm Bureau Mut. Ins. Co.*, 225 Kan. 205, 589 P.2d 579 (1979), can be applied to the present case. In *Hays*, our Supreme Court concluded that an insurance agent can incur personal liability for a loss suffered by the agent's principal under a policy claim resulting from the agent's failure to forward an application for insurance to the insurance company. 225 Kan. 205, Syl. ¶ 3. Scottsdale argued that the factual situation in *Hays* is analogous to the facts in the instant case. We disagree. We note a key factual dissimilarity between the two cases. Unlike the present case, the insurance company in *Hays* never ratified the actions of the insur-

ance agent. Because of this key factual difference, the *Hays* holding is not controlling on the issue of indemnification in the present case.

We find that Scottsdale's ratification of the third-party defendants' actions relieved those parties of liability as a matter of law. As a result, the trial court did not err in granting the third-party defendants' motion for summary judgment. Because we are affirming the trial court's grant of summary judgment in favor of the third-party defendants, it is unnecessary to address the issue raised in MCI and Felber's cross-appeal.

Affirmed; cross-appeal dismissed.