NOT DESIGNATED FOR PUBLICATION

No. 123,081

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

The Governing Body of
THE CITY OF OTTAWA, KANSAS,
*Appellee*,

v.

Real Property Commonly Known As
122 N. SYCAMORE ST., OTTAWA, KANSAS, 66067, et al.,
*Defendants*,

and

LINDA Y. COVINGTON and DEBRA A. BARTLETT,
*Appellants*.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed April 16, 2021.
Reversed and remanded for further proceedings.

*R. Scott Ryburn*, of Anderson & Byrd, LLP, of Ottawa, for appellants.

*Blaine Finch*, of Harris Kelsey, Chtd., of Ottawa, and *Darby VanHoutan*, legal intern, of the same
firm, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

PER CURIAM: The City of Ottawa filed this quiet title action to clear up any
dispute over ownership of three lots within the City, which it contends Earl and Georgetta
Bartlett sold to the City in 2002 or 2003. Both Bartletts are now deceased, but their
daughters, Linda Covington and Debra Bartlett, believe the land in question is rightfully

1

theirs by transfer from their parents. The district court granted the City's motion for summary judgment, finding the City owns the property. The daughters have appealed, contending there are factual disputes on material issues which should have precluded summary judgment. They also believe the district court failed to view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the daughters. Because we agree with the daughters that the district court erred in granting summary judgment, we reverse and remand for further proceedings.

FACTS

In 2019, the City filed a petition to quiet title on three lots within the City. In the petition, the City alleged that it had an agreement to buy and sell real estate (the agreement) with the Bartletts, now deceased. The agreement was allegedly entered sometime between July 2002 and March 2003. According to the City, it provided that the Bartletts would sell the property to the City, and in exchange the City would do three things:  (1) pay the Bartletts $30,000 for the property, (2) waive fees and claims against the Bartletts for a house owned by the Bartletts but demolished by the City, and (3) pay off a $2,641.03 lien in Franklin County case No. 00C93. The City contended the agreement was signed by all parties. The City also claimed that it built a wastewater treatment plant on the property in 2003 and 2004 and that it has been in "exclusive control and possession of the property since that time."

As evidence of the $30,000 payment, the City attached a ledger to its petition, which allegedly showed a payment of $30,000 to the Bartletts. The City also attached a release of lien for the demolished property referenced in the agreement and a satisfaction of judgment filed by the plaintiff's attorney in the Franklin County case. Finally, the City included a copy of a warranty deed, which appeared to be signed by the Bartletts, conveying the property to the City. However, the City admitted that "for reasons that are

2

unknown" the deed executed by the Bartletts was never recorded by the City. The City cannot locate the original deed.

The City filed the petition because it was not the title owner of record for the property. In 2011, the Bartletts transferred the property to their daughters via a transfer on death deed. The daughters recorded the deed with the Franklin County Register of Deeds. Of significant importance, the Bartletts, and later the daughters, paid taxes on the property between 2003 and 2018.

In their answer, the daughters contested the validity of the agreement on several grounds. They also denied that the Bartletts' signatures were genuine. The daughters alleged that they worked closely with their parents on financial matters and, in 2003, were providing them with financial support. However, they were not aware that their parents received any payment from the City. The daughters also noted that neither the release of lien for the demolished property nor the satisfaction of lien filed in the Franklin County case (which was filed by the attorney for the judgment creditor) demonstrated that the City itself had paid off the liens.

The City moved for summary judgment. There were several attachments to the motion providing additional evidence and context. Included was a 2002 City ordinance authorizing the City to take the property through eminent domain to construct a wastewater treatment plant. The ordinance authorized the City Attorney at the time to acquire the property. By way of affidavit, the City also included evidence that the person who notarized the deed worked for the City Attorney and that the footer on the document was created by a fax machine in the City Attorney's office. It was dated March 31, 2002, almost two weeks after the deed was signed. The City argued that the Bartletts must have delivered the deed to the City Attorney for him to have had possession of it when it was faxed from his office.

3

Scott Bird, the City's Finance Director in 2002 and 2003, provided another affidavit. Bird reviewed the ledger attached to the City's petition and explained that it showed a "'greenbar' account record produced by the City's finance software in 2003" and if an entry appeared on the greenbar it meant the City had written a check. Attached to Bird's affidavit was an e-mail from him to the City Attorney dated August 8, 2003. Bird related to the City Attorney that Earl had visited him the prior week about the demolition charges the City had promised to forgive in the agreement. Earl said that the charges related to the land sale he made to the City.

Additionally, the City's Director of Utilities provided an affidavit stating that the City constructed its current wastewater treatment plant between 2003 and 2004. A fence was added around the plant, and the fence ran through the property. The fence remained in place at the time the affidavit was signed.

In their response to the City's motion, the daughters continued to dispute whether the City paid the Bartletts $30,000 or fulfilled the other conditions of the agreement. Additionally, they argued that there was no evidence to support the City's allegation that the Bartletts delivered the deed to the City. Covington provided an affidavit. In it, she stated that she had knowledge of the Bartletts' personal finances in 2002 and 2003 and they did not receive a payment of $30,000 from the City. She also alleged that she was familiar with her parents' signatures and that their genuine signatures were not on the deed. Finally, she denied that the City Attorney had the original deed in his possession on the date the deed was faxed.

The daughters also included an affidavit from Luis Nunez, who knew Earl for over 50 years. Nunez recounted that when the City began constructing the wastewater disposal plant, Earl went to City Hall to complain that the City was on his property and they did not have the authority to be there. At the time, Earl believed that he owned the property, and he told Nunez that he did not give the City permission to build on it.

4

The district court granted the City's motion for summary judgment and held that the daughters failed to show a dispute as to any material fact. The district court's factual findings are as follows:

"2.   It appears there is sufficient evidence that an agreement existed between [the Bartletts] and the [City].

"3.   The agreement attached as Exhibit A to the [City's petition] is specific as to what was to be done and was signed by the Bartletts and the City (the 'Agreement').

"4.   The then city attorney had the authority to sign the Agreement on behalf of the City.

"5.   The evidence shows the City did perform its obligations as to filing a satisfaction of judgment in Franklin County Case No. 00 C 93 and releasing a lien it held against property owned by the Bartletts at [address omitted].

"6.   While [the daughters] contest whether payment was made from the City to the Bartletts as set forth in the Agreement, the Court finds that the two affidavits submitted by [the daughters] do not provide sufficient evidence to show a dispute about a material fact.

"7.   The ledger from the City showing expenditure of the funds, coupled with the partial performance of other terms of the Agreement and the Agreement itself provide sufficient evidence for the Court to find that all parts of the Agreement were fulfilled.

"8.   The email of Scott Bird attached as Exhibit A to his affidavit and filed with the Plaintiff's Motion for Summary Judgment further supports the Court's finding that the Bartletts were paid $30,000.00 as required by the Agreement as Mr. Bartlett raised an issue about performance of one obligation under the Agreement but failed to complain about non-payment.

"9.   Even taking all evidence in the light most favorable to the [daughters] the Court cannot find that there is a disputed issue as to a material fact."

The daughters have timely appealed from the district court's grant of summary judgment to the City.

ANALYSIS

The daughters raise several arguments on appeal. They argue that sufficient facts are in dispute to preclude summary judgment. Alternatively, they argue that even if there were no genuine issues as to the material facts the evidence did not support a grant of summary judgment. Both of these arguments focus on the issues of whether the City paid the Bartletts $30,000 and whether the Bartletts transferred the deed to the City. The daughters also argue that the district court erred when it held that the agreement did not violate the statute of frauds.

The standard of review for appeals from summary judgment is well-settled:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

This case is a quiet title action. In an action to quiet title under K.S.A. 60-1002, the plaintiff has the burden of establishing his or her title. The plaintiff must rely on the strength of his or her own title and not the weakness of his or her adversary's title. *Ford v. Willits,* 9 Kan. App. 2d 735, 745, 688 P.2d 1230 (1984), *aff'd* 237 Kan. 13, 697 P.2d 834 (1985).

6

This appeal also involves Kansas' law on deeds. "[B]efore a deed can operate as a valid transfer of title there must be a delivery of the instrument which becomes effective during the life of the grantor. What constitutes sufficient delivery is largely a matter of intention, which is a question of fact unless the evidence is uncontroverted. [Citation omitted.]" *Reed v. Keatley*, 187 Kan. 273, 276-77, 356 P.2d 1004 (1960). If the evidence shows that "the grantor, by words or acts, manifests an intention to divest himself [or herself] of title and vest it in another," then "it is sufficient to constitute a valid delivery." 187 Kan. at 277. The grantor need not deliver the deed directly to the grantee. Where the grantor delivers the deed to a third party "'with a declared or manifest purpose to make a present transfer of the title'" then "'a formal acceptance by the grantee is not required.'" 187 Kan. at 277.

*Sufficiency of the daughters' factual dispute*

In their first issue on appeal, the daughters assert that the district court erred when it found that there were no factual disputes as to material issues which would prevent summary judgment. They argue that sufficient facts are in dispute on two points— whether the City paid the Bartletts $30,000 and whether the Bartletts intended to transfer the deed. On these points, the district court held that the affidavits submitted by the daughters were insufficient to show a dispute about a material fact.

At the outset, we note that the primary issue is whether the Bartletts properly effectuated a deed transfer to the City. The issue of whether the City paid the Bartletts $30,000, however, is related as payment would tend to support the City's position and nonpayment would support the daughters' position.

The district court essentially held that the daughters' statements denying the City's allegation that it paid the Bartletts $30,000 was conclusory. In an affidavit attached to a motion for summary judgment, "[m]ere conclusory denials in the face of specific facts by

7

the moving party are not sufficient to place a factual statement in dispute." *RAMA Operating Company v. Barker*, 47 Kan. App. 2d 1020, Syl. ¶ 6, 286 P.3d 1138 (2012). However, Covington's affidavit contained more than conclusory statements. She did not flatly deny that the City paid the Bartletts—that would have been a conclusory statement—instead, she said she had knowledge of the Bartletts' personal finances in 2002 and 2003 and they did not receive a payment of $30,000 from the City.

Additionally, we note that the City's facts were not exactly specific. It provided evidence that it wrote a check but no evidence that the check was delivered to or negotiated by the Bartletts. The mystery of the original deed's location shows there was a breakdown in the process at some point. For the district court to assume that the City did in fact deliver the payment to the Bartletts was inappropriate in light of Covington's affidavit and the standard for reviewing motions for summary judgment.

The district court also erred when it held there was no sufficient factual dispute regarding the Bartletts' intent to transfer the deed. The court did not make any specific findings that the Bartletts signed and transferred the original deed to the City. However, this finding is implied by its ruling. The court's holding completely ignores Covington's affidavit in which she said that she was familiar with her parents' signatures and their genuine signatures were not on the deed. If Covington had merely denied the authenticity of the signatures, without more, her statement would have been conclusory. But she did not—Covington asserted that she had personal knowledge of the Bartletts' signatures. This is not a conclusory statement that the court was permitted to ignore.

The district court's opinion also made no reference to the other facts tending to show that the Bartletts did not intend to transfer the deed, including Nunez' affidavit, the fact that the City did not have possession of the original deed, and the evidence that the Bartletts and the daughters continued paying taxes on the property. The district court was required to accept these facts as true and consider all facts in the light most favorable to

8

the daughters. Instead, it ignored the facts that were favorable to the daughters and erroneously awarded summary judgment to the City.

While some assertions included in the daughters' response opposing summary judgment were conclusory, there were also substantive allegations material to the relevant issues in this case. The daughters successfully demonstrated factual disputes as to the issues of whether the City paid the Bartletts $30,000 and whether the Bartletts transferred the original deed to the City. Therefore, the district court erred in granting summary judgment to the City.

*Sufficiency of the evidence in support of the district court's grant of summary judgment*

Alternatively, the daughters argue that insufficient evidence supports the district court's grant of summary judgment to the City. Again, they focus on the facts regarding the City's alleged $30,000 payment and whether the Bartletts properly delivered the deed.

Because the district court was ruling on a motion for summary judgment, it was required to "resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought." *GFTLenexa, LLC*, 310 Kan. at 982. Instead of adhering to this standard, the district court repeatedly considered the facts and reasonable inferences drawn from the evidence in favor of the City.

The district court inferred that the City adhered to the agreement and paid the Bartletts because (1) the City's ledger showed a check had been written, (2) the City satisfied the other two conditions of the agreement by filing a satisfaction of judgment in the Franklin County case and releasing the lien it held against the Bartletts' property, and (3) Bird's e-mail recounting his visit with Earl showed that Earl "raised an issue about performance of one obligation under the agreement but failed to complain about non-payment."

9

As a preliminary matter, to resolve this point it is important to get the timeline in this case correct. Trying to do so reveals inconsistencies caused by ambiguity in the City's arguments. For example, the City alleged that it entered the agreement with the Bartletts sometime between July 2002 and March 31, 2003. Its other evidence contradicts this statement. We note that the satisfaction of judgment for the Franklin County case was filed in January 2003. But if one of the terms of the agreement was for the City to file the satisfaction, then it logically follows that the agreement was entered before the satisfaction was filed in January 2003.

Additionally, the release of lien provided by the City showed that the lien itself was not filed until October 2002. The City obviously could not have entered an agreement to release the lien before it existed. Thus, common sense indicates that the alleged agreement would have had to be entered sometime between October 2002 and January 2003, not July 2002 and March 2003 as the City alleged.

Due to the lack of evidence that the $30,000 was actually delivered to the Bartletts and accepted by them, the district court had to draw the conclusion that the Bartletts were paid by pure inference. The court inferred that the City paid $30,000 to the Bartletts based on the City's greenbar record showing an expenditure had been made and the City's performance of the other two conditions of the agreement. The court also relied on Bird's e-mail to the City Attorney, which stated:

> "Earl Bartlett came in to see me last week about demolition charges that were to be forgiven on [address omitted]. He said this related to the land sale he made to the city. It seems to me these are two separate issues. Can you help put the pieces together on this please? The agreement you signed with the Bartletts references Case [N]o. 00 C 93."

10

The court reasoned that this e-mail supported the City's position because Earl "raised an issue about performance of one obligation under the agreement but failed to complain about non-payment."

However, there were also facts which give rise to a reasonable inference that the City did not pay. Notably, Covington's sworn testimony was that she was familiar with the Bartletts' finances and the Bartletts never received $30,000. The court's reliance on the e-mail was also misplaced, as it can lead to different conclusions when it is considered in the light most favorable to the daughters. For example, it could be construed to show that the City had failed to fulfill its promise to release the lien until at least eight months after entering the agreement and then only after being confronted by Earl. It could also be interpreted as showing that the City did not know its obligations under the agreement. Bird provided the affidavit that the City relied on to prove that it paid the Bartletts in March 2003. But in the August 2003 e-mail, Bird appeared to have no understanding of the terms of the agreement. The e-mail also did not purport to be a full report of Bird's encounter with Earl. Because this was a motion for summary judgment, the court should have drawn inferences that favored the daughters.

Similarly, because the City does not have and did not record the original deed, the district court impermissibly inferred that the Bartletts delivered it to the City. Again, there were facts that gave rise to an alternate inference. First, Covington's affidavit provided that she was familiar with her parents' signatures and that their signatures were not on the deed. Second, the Bartletts continued paying taxes on the property, which is inconsistent with the idea that they transferred the property to the City. The City's acceptance of the tax monies is also inconsistent with the City's position that it owned the property. Third, Nunez' affidavit recounted Earl's trip to City Hall to complain about the City's construction of the wastewater disposal plant on his property. Nunez stated that Earl told him that he owned the property. Finally, the Bartletts made a later transfer of the property via their transfer on death deed. While it may have been reasonable to infer that

11

the City had the deed and lost it, it is also reasonable to infer based on these facts that the Bartletts never delivered the deed. The district court erred by drawing inferences in favor of the City rather than the daughters.

The operative facts in this case occurred almost 20 years ago. Several of the people involved in the transaction have died or otherwise did not participate in the case. The evidence that has been pieced together by the parties shows that there was a major breakdown somewhere that resulted in failure to record the deed, assuming one actually existed and was delivered to the City. The daughters argue that this is because the Bartletts never intended to transfer the deed nor received payment for it. The City draws a different conclusion. But summary judgment rules require the district court to resolve all facts and reasonable inferences drawn from the evidence in favor of the daughters. Because the district court failed to do so, we must reverse its decision to grant the City's motion for summary judgment.

*Statute of frauds*

Before the district court and now on appeal, the daughters have argued that the agreement between the City Attorney and the Bartletts violated the statute of frauds. They assert that "a contract for the sale of any real estate made by an agent is void as a matter of law under the statute of frauds unless there is *written authority which authorizes the agent* to enter into an agreement for the purchase of real estate." The City replies that its 2002 ordinance "explicitly gave the city attorney powers related to the acquisition of certain parcels of property, including the Bartletts['], for purposes of expanding the City's wastewater treatment plant." Additionally, the City Attorney was an appointed city officer and had both apparent and real authority to bind the City to contracts like the agreement in this case.

12

To the extent this issue requires interpretation of the statute of frauds, K.S.A. 33-106, statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

The daughters' argument fails for several reasons. First, Kansas' statute of frauds provides that "[n]o action shall be brought . . . to charge any person upon any agreement made . . . upon any contract for the sale of lands . . . unless the agreement upon which such action shall be brought" is "in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." K.S.A. 33-106. This case is not a legal action to enforce the agreement, it is an equitable action to quiet title. The City is not alleging that the Bartletts violated the agreement, it is alleging that the agreement was wholly satisfied by both parties. This is not a case where an action is being brought to enforce a contract for the sale of lands. Any opinion on whether the agreement violated the statute of frauds would be advisory, and we cannot issue advisory opinions. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008).

But even if it was necessary to decide the statute of frauds issue, the City's argument would prevail either because the 2002 ordinance provided adequate written authorization or because the City ratified the City Attorney's actions. The ordinance authorized the City Attorney at the time to acquire the Bartletts' property. The daughters argue that this was insufficient to provide the City Attorney with the proper authority. However, any ambiguity in the ordinance regarding the City Attorney's authorization was clarified by the City's subsequent acceptance of the agreement. The City's actions in allegedly fulfilling the conditions of the agreement show that even if the City Attorney was not properly authorized in writing, the City ratified the City Attorney's actions. See 27 A.L.R. 606 ("Where the Statute of Frauds requires that the memorandum of a contract for the transfer of an estate or interest in lands, etc. must be signed by the party to be charged, or by someone by him [or her] lawfully authorized in writing, the authority must

13

be conferred by writing, and, *in the absence of a ratification by the principal*, a memorandum of a contract executed by an agent acting under parol authority is void and of no effect." [Emphasis added.]). Once a principal is aware of an agent's unauthorized actions, it "must promptly repudiate the agent's act or it is presumed that the principal ratified the act." *Foley Co. v. Scottsdale Ins. Co.*, 28 Kan. App. 2d 219, Syl. ¶ 1, 15 P.3d 353 (2000).

For these reasons, we will not reverse the district court's decision on the basis that the statute of frauds was violated by the City. Our reversal is based on the district court's improper grant of summary judgment to the City.

Reversed and remanded for further proceedings.